UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EVAN NEILSON,                                    Case No. 24-10934

      Plaintiff,                                Hon. F. Kay Behm

v.                                               United States District Judge

YVONNE BRANTLEY,

      Defendant.
_____ /

## OPINION AND ORDER ON MOTION FOR DEFAULT JUDGMENT (ECF No. 22)

### I.   PROCEDURAL HISTORY

Plaintiff Evan Neilson filed a complaint on August 9, 2024 against Defendant Yvonne Brantley alleging a number of constitutional violations connected to their joint employment at the Michigan State Police Flint Post.  ECF No. 1.  Plaintiff served the summons and complaint upon Brantley in accordance with the court's order authorizing alternate service.  *See* ECF No. 20, PageID.112.

Fed. R. Civ. P. 12(a)(1) provides that a defendant must provide an answer within twenty-one (21) days of being served with a summons and complaint.  The deadline for Brantley to serve an answer or otherwise respond to the complaint in this matter was September 23,

1

2024.  Neilson filed his request for entry of default against Brantley on June 26, 2025, which was entered that same day.  ECF Nos. 23, 24.  On July 17, 2025, Neilson moved for a default judgment against Brantley.  ECF No. 22.  On February 4, 2026, the court held a hearing on Plaintiff's motion for a default judgment against Defendant, at which Plaintiff testified.

For the reasons set forth, the court **GRANTS** Plaintiff's Motion for Default Judgment, awards damages accordingly, and closes the case.

## II.   FACTUAL BACKGROUND[1]

Plaintiff Evan Neilson has worked for the Michigan State Police (MSP) since 2015.  Neilson was eventually assigned to the MSP Flint Post.  In July 2021, Neilson observed an arrest and video footage of the same involving Trooper Jared Chiros.  Plaintiff determined, based on his observations, that Chiros had lied on a police report, which was in violation of departmental policy.  It appeared that Chiros engaged in a high-speed police chase without his overhead lights on so that the dashcam would not activate.

---

[1] On a motion for default judgment, the court takes these facts from the Complaint and accepts them as true.  ECF No. 1, PageID.2-11.

Plaintiff reported his findings to Sergeant Craig Carberry, who in turn emailed a Lieutenant to set a meeting to address Plaintiff's concerns.  Chiros discovered Plaintiff's report, and Chiros began harassing Plaintiff by calling him a "snitch" and telling other troopers not to trust Plaintiff.

Plaintiff says that in October 2021 and in retaliation for his prior reports of Chiros' unlawful actions, Plaintiff was denied an interview for an open sergeant position at the Flint Post – Chiros was selected instead.  After Sergeant Chiros' promotion and approximately six months later, in Summer 2022, Plaintiff received a call from Defendant Brantley during work hours.  During that phone call, Defendant began telling Plaintiff that he needed to apologize and say he was sorry to Sgt. Chiros.  Defendant told Plaintiff that apologizing to Chiros would be a good conflict resolution tactic, which to him implied that she would not treat Plaintiff fairly until he had apologized to Chiros for his gross misconduct.  According to Plaintiff, Defendant had developed a relationship with Chiros and several other administrative and command officers with the Michigan State Police around this time.  Defendant was in charge of promotions and had the power to allow

Plaintiff to promote to sergeant; however, Plaintiff alleges that she utilized her power in a retaliatory manner, refusing to promote Plaintiff in retaliation for his prior reports of Chiros' unlawful behavior. Defendant would also favor certain individuals and target them for either promotion or non-promotion and, for those who she wanted promoted, she would feed them answers to test questions and provide the test questions to prepare for taking the examination.

Plaintiff encountered Chiros at social events, and Chiros' comments calling Plaintiff a "snitch," among other things, led Plaintiff to file a formal administrative complaint with Internal Affairs.  That investigation, however, was placed on hold, because Chiros was suspended after multiple people came forward with allegations of sexual assault, assault, and other mistreatment.

In July 2022, Plaintiff was reassigned to the Federal Bureau of Investigation and remained in that role until July 2023, when he was assigned "back on the road."  But on or about August 11, 2023, Plaintiff was placed on the *Brady-Giglio* list at the Genesee County Prosecuting Attorney's Office.  The *Brady-Giglio* list tracks the names of officers who have "sustained incidents of untruthfulness or lack of candor

4

placing their credibility into question and requiring that said information be disclosed to a criminal defendant." ECF No. 1, PageID.7-8. An officer whose name is on the list may often be screened from serious cases, find it unable to act as an officer in a jurisdiction where he is on that list, or lose his career. Plaintiff alleges that he did, in fact, face financial and reputational harm by this placement.

Nielson says that Defendant Brantley gave the names of individuals who complained to Internal Affairs and participated in the IA investigation regarding Sgt. Chiros to the Genesee County Chief Assistant Prosecutor Tamara Phillips, who is or was allegedly good friends with Defendant. Plaintiff and the others involved were all then placed on the *Brady-Giglio* list by Phillips. Plaintiff alleges that Brantley caused Plaintiff to be placed on the *Brady-Giglio* list in retaliation for his reporting of Chiros.

Defendant and Chiros have since had their employment with the Michigan State Police terminated.

## III.   STANDARD OF REVIEW

"Entry of default and a default judgment are distinct events that require separate treatment." *Ramada Franchise Sys., Inc. v. Baroda*

*Enters., LLC*, 220 F.R.D. 303, 304 (N.D. Ohio 2004) (internal citation omitted).  An entry of default is a prerequisite to a default judgment. Pursuant to Fed. R. Civ. P. 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  An entry of default "conclusively establishes every factual predicate of a claim for relief."  *Thomas v. Miller*, 489 F.3d 293, 299 (6th Cir. 2007) (citing *Harmon v. CSX Transp.*, 110 F.3d 364, 368 (6th Cir. 1997)).  However, entry of a default does not establish damages.  *See Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110 (6th Cir. 1995); *see also Kelley v. Carr*, 567 F. Supp. 831, 841 (W.D. Mich. 1983) ("A default judgment on well-pleaded allegations establishes only defendant's liability; plaintiff must still establish the extent of damages.")

Default judgment is governed by Fed. R. Civ. P. 55(b)(2).  On entry of default, the well-pleaded allegations of the complaint relating to a defendant's liability are taken as true, with the exception of the allegations as to the amount of damages.  *Thomas*, 489 F.3d at 299; *see also Kelley*, 567 F. Supp. at 840.  Thus, the plaintiff is required to

provide proof of all damages sought in the complaint.  *See John E. Green Plumbing and Heating Co., Inc. v. Turner Constr. Co.*, 742 F.2d 965, 968 (6th Cir. 1984) ("We recognize that the law 'does not require impossibilities' when it comes to proof of damages, but it does require whatever 'degree of certainty tha[t] the nature of the case admits.'") (internal citations omitted).  Fed. R. Civ. P. 55(b)(2) allows courts to conduct hearings in order to "determine the amount of damages" so it may effectuate a judgment.

## IV.   ANALYSIS

### A.   Default As to Liability

Because a default has been entered, all of Plaintiff's well-pleaded allegations, except those relating to damages, are deemed to be admitted.  The facts must still be "sufficient to support a finding of liability as to each defendant." *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 848 (E.D. Mich. 2006).  "In other words, the complaint must be able to survive a Rule 12(b)(6) motion to dismiss." *Howard v. Dearborn Motors 1, LLC*, No. 17-12724, 2020 U.S. Dist. LEXIS 45175, at *9 (E.D. Mich. Mar. 16, 2020).

#### 1)   *Count I: First Amendment Retaliation*

Plaintiff is entitled to default judgment on his First Amendment retaliation claim.  The court in part finds persuasive the related and largely similar analysis in *Minchella v. Brantley*, No. 24-cv-12680, ECF No. 11.  To succeed on a First Amendment retaliation claim, Plaintiff must demonstrate that (1) he was engaged in a constitutionally protected activity; (2) that the defendant's adverse action caused him to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the adverse action was motivated at least in part as a response to the exercise of the plaintiff's constitutional rights.  *Adair v. Charter County of Wayne*, 452 F.3d 482, 492 (6th Cir. 2006) (citation omitted).  When a plaintiff is a public employee, he must meet additional hurdles to show that he engaged in protected activity.  *Id.* at 492.  First, he must have spoken "as a citizen" rather than as an employee.  *Weisbarth v. Geauga Park Dist.*, 499 F.3d 538, 542 (6th Cir. 2007) (citing *Garcetti v. Ceballos*, 547 U.S. 410 (2006)).  Second, he must demonstrate that his speech touched on matters of public concern.  *Adair*, 452 F.3d at 492 (citing *Connick v. Myers*, 461 U.S. 138, 146 (1983)).  Third, the employee's interest "in commenting upon matters of public concern" must outweigh "the

interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Id.* (citing *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968)).

Plaintiff has sufficiently alleged that his reporting of misconduct to internal affairs and participation in a state-led investigation was as a citizen reporting on matters of public concern, and thus constituted protected activity under the First Amendment. *See Anders v. Cuevas*, 984 F.3d 1166, 1176 (6th Cir. 2021) (cooperation with internal affairs investigation entitled to First Amendment protection); *Marohnic v. Walker*, 800 F.2d 613, 616 (6th Cir. 1986) (public employee's cooperation in a state investigation was conduct entitled to First Amendment protection); *See v. City of Elyria*, 502 F.3d 484, 493 (6th Cir. 2007) (officer's statements to FBI disclosing corruption within police department were protected activity). "Public interest is near its zenith when ensuring that public organizations are being operated in accordance with the law[.]" *Marohnic*, 800 F.2d at 616. And, according to the allegations, which the court takes as true, Defendant placed Plaintiff on the list and refused to promote him—both adverse actions— because Plaintiff reported Chiros to internal affairs. ECF No. 1,

9

PageID.7.  Improperly placing Plaintiff on the *Brady–Giglio* list, and refusing to promote him, are both likely to chill speech, especially because the consequences of being on the list can be severe and the loss of a promotion can (and allegedly did) have severe economic consequences.  An ordinary trooper would likely think twice and decline to report misconduct out of fear of being placed on the list or losing out on valuable career opportunities.

By virtue of her default, Brantley has admitted that she caused Neilson to be falsely placed on the *Brady-Giglio* list, that the reasons for placing him on the list were fabricated, and his placement on the list was only in retaliation for Plaintiff's protected First Amendment activity.  Plaintiff has demonstrated his entitlement to default judgment on his First Amendment retaliation claim.

### *2)    Counts II-IV: Fourteenth Amendment Claims*

Plaintiff also brough counts for denial of procedural due process (II), equal protection (III), and substantive due process (IV).  On review of Plaintiff's complaint, the court was concerned that these counts were not sufficient to state a claim – particularly in light of Judge Murphy's decision in a very similar case involving the same defendant.  *See*

10

*Minchella v. Brantley*, No. 24-cv-12680, ECF No. 11 (order on default judgment finding plaintiff was not entitled to judgment on counts II-IV). In light of that decision, the court asked for a short briefing by Plaintiff, who conceded that if that decision was persuasive as to Count I, then it would also be persuasive as to the outcome of Counts II-IV.  The court therefore denies default judgment as to Counts II-IV.  *See Minchella*, ECF No. 11, PageID.63-66.

### B.    Remedies

Having determined that Plaintiff is entitled to default judgment against Defendant for First Amendment retaliation, the court now turns to the issue of appropriate remedies for Plaintiff.

Well-pleaded allegations in the complaint as to liability are taken as true when a defendant is in default, but not as to damages.  *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 848 (E.D. Mich. 2006). "[W]here the damages sought are not for a sum certain, the Court must determine the propriety and amount of the default judgment." *J & J Sports Prods., Inc. v. Rodriguez*, No. 08-1350, 2008 WL 5083149, at *1 (N.D. Ohio Nov. 25, 2008) (citing Fed. R. Civ. P. 55(b)).  Rule 55(b)(2) permits, but does not require, the district court to conduct an

evidentiary hearing to determine damages.  *Arthur v. Robert James &*
*Assoc. Asset Mgmt., Inc.*, No. 11-460, 2012 WL 1122892, at *1 (S.D. Ohio
2012) (citing *Vesligaj v. Peterson*, 331 F. App'x 351, 354–55 (6th Cir.
2009)).

### 1)   Plaintiff's Damages

A plaintiff may recover compensatory damages for a § 1983 claim
when the court finds that Plaintiff's First Amendment rights were
violated.  *King v. Zamiara*, 788 F.3d 207, 213 (6th Cir. 2015).  But a
plaintiff "is not entitled to compensatory damages unless he can prove
actual injury caused by the violation."  *Id.* (citing *Carey v. Piphus*, 435
U.S. 247, 264 (1978)).  In cases addressing damages for "an injury that
is likely to have occurred but difficult to establish," courts can award
some form of presumed damages.  *Memphis Cmty. Sch. Dist. v.
Stachura*, 477 U.S. 299, 310–11 (1986).  "Compensatory damages may
include not only out-of-pocket loss and other monetary harms, but also
such injuries as impairment of reputation, personal humiliation, and
mental anguish and suffering."  *Id.* at 307 (citation modified); *see
also Seymore v. Farmer*, No. 16-13808, 2022 WL 18027629, at *2 (E.D.
Mich. Dec. 29, 2022).  Compensatory damages are often difficult to

calculate with precision, and therefore, "[t]he amount is left to the sound discretion of the fact finder." *King*, 788 F.3d at 215.

*Economic damages.* The court heard testimony from Plaintiff reflecting lost overtime hours due to lost promotional opportunities and additional lost income as a result of lower pay from that same lost promotional opportunity.  The court found Plaintiff's testimony to be largely credible, and notes that Defendant has not appeared to contradict Plaintiff's version of events, cross-examine Plaintiff about the amounts he testified to, or present controverting evidence.  The court finds that Plaintiff proved an actual economic injury—including both lost overtime wages and lost income from lost promotional opportunities—that resulted from and was caused by Defendant's conduct.  The court calculates the economic impact of Neilson's missed promotional opportunity as a result of Brantley's retaliatory conduct as follows.  From November 1, 2021 to September 30, 2022, he would have made an extra $3.58 per hour.  *See* Exhibit 1 (introduced into evidence at the hearing).  From October 1, 2022 to September 30, 2023, he would have made an extra $3.79 per hour.  *See* Exhibit 2.  From October 1, 2023 to April 28, 2024, he would have made an extra $3.86 per hour.

*See* Exhibit 3. At forty hours per week, that totals $19,245.60 from November 1, 2021 to April 28, 2024 lost income above his actual pay during that time period. *See also* Exhibit 4 (Plaintiff's calculations, submitted at the hearing). The court also calculates missed overtime pay attributable to the missed promotional opportunity – that is, Neilson testified that if he had made sergeant, he would have worked, on average, one more 12-hour shift per week than he did, and so would have earned the equivalent value of one overtime 12-hour shift per week over the last several years. The court calculates this amount of lost income, based on Neilson's representations, as $94,950.12. *See* Exhibit 4.

*Noneconomic damages*. The court also credits Plaintiff's testimony that he suffered additional injuries in the form of emotional and reputational harm. Plaintiff spent a great deal of time under a cloud of suspicion that was not explained (and to this day remains largely unexplained), and may in the future have to report his apparently baseless addition to a *Brady-Giglio* list, despite its lack of foundation. The court also credits that Plaintiff suffered reputational harm that is difficult to quantify, by whatever closed-door conversations

14

Defendant Brantley engaged in that denied him promotional opportunities.  The court will award additional compensatory damages in the amount of $10,000 for emotional and reputational injuries.  The court bases this award on the stress suffered by Plaintiff during his time on the *Brady-Giglio* list, reputational harm that Plaintiff may suffer or may have suffered due to his time on the list, and the reputational harm associated with the denial of promotional opportunities.

*Punitive damages.*  Punitive damages are never awarded as of right.  *Smith v. Wade*, 461 U.S. 30, 52 (1983).  "Punitive damages are appropriate in a § 1983 action 'when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'"  *King v. Zamiara*, 788 F.3d 207, 216 (6th Cir. 2015) (quoting *Smith*, 461 U.S. at 56).  When considering punitive damages, the factfinder's discretionary moral judgment should be guided by the purpose of punitive damages—"to punish the defendant for his willful or malicious conduct and to deter others from similar behavior."  *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 306 n.9 (1986); *see King*, 788 F.3d at 216–17.

15

Taking all well-pleaded allegations as true, considering Neilson's testimony at the evidentiary hearing, and considering the intentional effect on Plaintiff's career prospects in regards to promotion opportunities along with his placement on the *Brady-Giglio* list, the court finds that Defendant demonstrated at the very least reckless indifference to the federally protected First Amendment rights of Plaintiff, and awards $10,000 in punitive damages.

### 2)   Attorney Fees

42 U.S.C. § 1988(b) permits courts to grant "a reasonable attorney's fee" to "the prevailing party" in a § 1983 action. *Maryville Baptist Church v. Beshear*, 132 F.4th 453, 455 (6th Cir. 2025). A "prevailing party" is one who succeeds on a significant issue "which achieves some of the benefit the parties sought in bringing suit." *Farrar v. Hobby*, 506 U.S. 103, 109 (1992) (quotation omitted).

Determining a reasonable fee begins with calculating the product of a "reasonable hourly rate" and the "number of hours reasonably expended on the litigation," known as the "lodestar" amount. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (noting that the court may adjust the fee based upon the circumstances of the case, including the "results

obtained"). "The key requirement for an award of attorney fees is that the documentation offered in support of the hours charged must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation." *Imwalle v. Reliance Med. Products, Inc.*, 515 F.3d 531, 553 (6th Cir. 2008). District courts are required to give a clear explanation for its award calculation (for example, which hours it is rejecting, which it is accepting, and why). *Moore v. Freeman*, 355 F.3d 558, 566 (6th Cir. 2004). But in calculating a reasonable fee, "district courts are not required to act as 'green-eyeshade accountants' and 'achieve auditing perfection' but instead must simply to do 'rough justice.'" *The Northeast Ohio Coalition for the Homeless v. Husted*, 831 F.3d 686, 703 (6th Cir. 2016) (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011)). In other words, the court may rely estimates based upon its "overall sense of a suit." *Id.*

First, the court agrees that the hourly rate for Plaintiff's counsel ($350/hr) is reasonable. In general, "the 'prevailing market rate' is that rate which lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." *Adcock–*

17

*Ladd v. Secretary of Treasury,* 227 F.3d 343, 350 (6th Cir. 2000). "District courts have relied on the State Bar of Michigan [] Economics of Law Practice Survey to determine average billing rates in Michigan, and the Sixth Circuit has approved this practice." *O'Connor v. Trans. Union, LLC.,* No. 05-cv-74498, 2008 WL 4910670 at *5 (E.D. Mich. Nov. 13, 2008).  After reviewing the Survey (admitted into evidence as Exhibit 6 at the hearing), Plaintiff's counsel is seeking a rate reflecting a rough average between the median billing rate for the Flint area and the median billing rate for plaintiff-side employment lawyers in Michigan, and the court finds the hourly rate of $350 to be reasonable.

Second, the court finds that the time spent on this case was reasonable.  When determining the reasonable number of hours worked, "the standard is whether a reasonable attorney would have believed the work to be reasonably expended in pursuit of success at the point in time when the work was performed." *Wooldridge v. Marlene Indus. Corp.,* 898 F.2d 1169, 1177 (6th Cir. 1990).  The "fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley,* 461 U.S. at

18

437. To carry the burden, attorneys must maintain time records detailed enough to enable courts to review the reasonableness of the hours expended. *Wooldridge v. Marlene Indus. Corp.*, 898 F.2d 1169, 1177 (6th Cir. 1990), *abrogated on other grounds by Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598 (2001). Courts then review the billing claims and exclude "[e]xcessive, redundant, or otherwise unnecessary hours." *Butcher v. Bryson*, No. 3:12–00251, 2014 WL 4385876, at *3 (M.D. Tenn. Sept. 5, 2014) (citing *Hensley*, 461 U.S. at 434).

Plaintiff's counsel submitted an itemized timesheet claiming a total of 29.3 hours, plus 2.25 hours for the evidentiary hearing. *See* Exhibit 5 (admitted at the hearing). After reviewing the submitted timesheet, the court finds that the hours Plaintiff's counsel seeks for this case are reasonable. Therefore, the court will award 100% of the attorney's fees sought, totaling $11,042.50.

### 3) Costs & Expenses

42 U.S.C. § 1988 allows district courts to award "those incidental and necessary expenses incurred in furnishing effective and competent representation." *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 827

(6th Cir. 2013) (citation modified). Recoverable expenses are those "incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services." *Id.* (citation modified). The expenses requested by Plaintiff are reasonable and the court will award Plaintiff $647.20 in costs and expenses.

## V. CONCLUSION

For the reasons stated above, the court (1) **GRANTS** the motion for default judgment with respect to Count I; (2) **DENIES** the motion as to Counts II, III, and IV; and (3) **AWARDS** damages, fees, and costs as follows: $124,195.72 in compensatory damages, $10,000 in punitive damages, $11,042.50 in attorney's fees, $647.20 in costs and expenses.

An order of judgment will follow.

**SO ORDERED**.


Date: February 6, 2026              s/F. Kay Behm
                                    F. Kay Behm
                                    United States District Judge